## ACTION BASED ON FICTITIOUS ENTRIES.

[Common Pleas Court of Licking County.]

GEORGE P. WEBB, RECEIVER OF THE HOMESTEAD BUILDING &
SAVINGS COMPANY, v. A. A. STASEL, RECEIVER OF
THE NEWARK SAVINGS BANK COMPANY.

Decided, October, 1906.

*Banks and Banking—Credit Induced by Fictitious Entries—Dividend
Paid by a Railway Association on the Faith of a False Credit—
Actions—Receivers—Fraud.*

L, as cashier of a bank and treasurer of a building association, cred-
ited himself with $10,000 on the books of the bank and entered a
credit for a like amount on the pass-book of the building associa-
tion. On the faith of this fictitious credit the building association
declared and paid a dividend to its stockholders. Subsequently re-
ceivers were appointed for both the bank and the building associa-
tion, and the receiver of the building association sued the receiver
of the bank on an account which included this fraudulent credit.

*Held:* That no cause of action existed for the amount represented by
the fictitious entry, and as to that item the petition should be dis-
missed.

SEWARD, J. (orally).

The petition states the amount of the plaintiff's claims to
be $22,464.83. But the only portion litigated is the sum of
$14,000. This is made up of two items, one of $10,000 and the
other of $4,000, each of which appears as a credit to James F.
Lingafelter, Secretary of the Homestead Building & Savings
Company, under different dates.

Some time in 1902, probably in June, the State Bureau of
Inspection of Building Associations, having charge of building
associations—their inspection—ordered an examination of the
Homestead Building & Savings Company. That examination
resulted in a finding that there was a shortage of some $79,000.
This was reported, and Mr. Lingafelter, secretary of the com-
pany, was notified of the fact. He claimed that the shortage
was only apparent; that an examination of the books from the
start would bear him out in his claim. It was agreed that an

expert accountant should be employed to go over the books and determine the actual condition of affairs.

Lingafelter, anxious to declare and pay a dividend, proposed to put up $10,000 out of his own funds, with which to pay a dividend.

As cashier of the bank and secretary of the Homestead Building & Savings Company, he credited himself on the books of the bank with ten thousand dollars, and the treasurer of the building association with a like sum on the pass-book of the association. Neither the $10,000 nor the $4,000 was deposited by Lingafelter in the savings bank at the time he credited himself as secretary with these several amounts, nor afterward, for that matter.

The transactions were purely fictitious, with an intent, as the court views it, to deceive the directors of the building association. There was no semblance of good faith on the part of Lingafelter in either of these transactions. There was no cash passed at the bank and no credit asked for by him from the bank. He had been informed that there was a shortage in the building association of a very considerable amount, something like $79,000. He became intensely interested in keeping this condition from the ears of the public, and especially those who were patrons of the institution of which he was secretary. It was time for the declaration and payment of a dividend. The building association had no surplus earnings out of which a dividend could be declared, much less paid. The stockholders were not entitled to a dividend except out of the net earnings, and there were none; on the contrary, there was a deficit of $79,000, of which the secretary was then advised. A failure to declare a dividend he knew would result in an exposure of the condition, while the payment of a dividend would allay suspicion, if any existed. To accomplish this purpose, this fictitious credit to himself, without the knowledge or consent of the bank, was made; and the stockholders received a dividend, which, under the circumstances, they were not entitled to, out of the funds of the bank. Each honestly thought that the dividend check received by him represented the earnings of the capital invested by him; but it did not; there were no earnings.

These two credits of $4,000 and $10,000 go to make up the balance, or a part of it, for which this suit is brought. The bank never got the money which these two credits are intended to represent. The $10,000 transaction occurred, as shown by the pass-book, July 17, 1902; the $4,000 transaction July 22, 1903, when Mr. Webber informed him of the discovery of another shortage and demanded that he pay it in.

As I have said, and I recur to it again, the inspector found that there was a shortage of $79,000. He called Mr. Lingafelter's attention to the fact, and Lingafelter insisted that it was only apparent; that a full examination would show that there was no shortage. He wanted to declare a dividend. He was informed by the inspector that he could not. He said that he would pay in the money with which to pay the dividend out of his private funds.

I am not able to understand why such a proposition was entertained by the inspector. Section 3836-18 provides what should be done under such circumstances in the following language:

"Should the inspector find, upon examination, that the affairs of any such association are in an unsound condition, and that the interests of the public demand the dissolution of such association and the winding up of its business, he shall so report to the attorney-general, who shall institute the proper proceedings for that purpose."

That was not done, and, therefore, these proceedings are now before the court.

I am cited to the case of *Bank* v. *Blakesley*, 42 Ohio State, 645. This is a case where Carlin & Company, a partnership, engaged in a private banking business, issued to Blakesley a certificate of deposit on their bank. They were then insolvent but in good credit when they issued this certificate. They ceased business, and immediately were succeeded by a savings bank, incorporated under the laws of Ohio, doing business in the same building in which Carlin & Company had formerly done business. This certificate issued to Blakesley, who was a minor, was presented at the savings bank, which gave to Blakesley a new certificate on the savings bank, marked the original "canceled" with a stamp of Carlin & Company, and charged to Car-

lin & Company. The members of the old firm were trustees of the new concern. Carlin & Company had some $84,000 standing to their credit, which was really fictitious and unauthorized. One of the old firm was cashier, one was president and another assistant cashier. This certificate was renewed from time to time and finally was merged in the one in suit. The savings bank refused payment and suit was brought upon the certificate. The Supreme Court held that the plaintiff had a right to recover.

It is claimed by the plaintiff that this case is authority in this case at bar. But, it will be observed that there is quite a distinguishing feature in that case from the case at bar. In that case, the money was received by Carlin & Company; they retained it; the new concern undertook to, and did, pay off and redeem many of the certificates issued by Carlin & Company, and the court holds that the transaction was in effect a payment by the bank to Carlin & Company of the amount of that certificate and a redeposit by Blakesley in the bank. That is the holding of the court and the theory upon which they find for the plaintiff.

In this case the bank received nothing from Lingafelter, as secretary, to induce the credit, and unless the fraudulent act of Lingafelter was the act of the bank it would not bind the bank, without the knowledge or assent of the directors. This credit was fraudulently made by the cashier, who was also secretary of the building association, to pay a pretended dividend to the stockholders, which was not due them. No dividend could be legally declared or paid; and while this amount might have been checked out, the bank was in no way responsible for the misappropriation of this fund.

So I do not think the Blakesley case is in point. Lingafelter was acting in a dual capacity, as secretary of the building association and as cashier of the bank, in this very transaction, and the transaction itself was an attempt to make the bank, of which he was cashier, debtor to the building association, without any consideration moving from the building association to the bank, to create the relation of debtor and creditor.

It is claimed that the building association, upon the faith of this credit, paid out the amount to its stockholders as divi-

dends.  Well, the stockholders were not entitled to a dividend, and each received more than was coming to him in just the amount he received as a dividend.  Under what principle of law or equity can he claim that the building association is entitled to recover this amount, that he may ultimately participate in its distribution?

The court has examined all the authorities at hand, and there were a great many of them.  Where a bank in good faith advanced money on collateral forwarded to it by the vice-president of another bank, and charged the loans to the latter, its rights are not affected by the fact that the transaction was fraudulent as between the vice-president and the bank which he represented, for the vice-president *had authority* to negotiate the loan, and the validity was not affected by his fraud. Had Mr. Lingafelter, as cashier of the bank, authority to make a loan to himself as secretary, and take no note or other paper as evidence of that indebtedness; simply crediting himself on the books of the bank; had he authority to do that?  The court thinks not.

I will read from 139 Mass., 332-35 (I believe this case was not cited), as to the knowledge of Lingafelter, the cashier, being knowledge of the bank, of which he was cashier:

"A shipped a cargo of sugar to B, and gave him authority to sell the same.  The bill of lading recited that the shipment was by order of B, and that the sugar was deliverable to his order, and made no mention of any agency.  B indorsed the bill of lading, and delivered it to a bank of which he was a director, and pledged the cargo to the bank as security for a loan by the bank to him.  This loan was approved by the board of directors, at a meeting at which B was present.  *Held:* That B's knowledge of the fraud was not imputable to the bank; and that an action by A against the bank, for the conversion of the sugar, could not be maintained."

The court say, at page 333:

"While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the com-

munication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating."

Suppose that Lingafelter had communicated his design in this matter to the directors of the bank, would anybody suppose that the matter would be consummated or could be consummated? The court thinks not.

Page 335: "The proposition that a director of a corporation acting avowedly for himself, or on behalf of another with whom he is interested in any transaction, can not be treated as the agent of the corporation therein, is well sustained by authority."

This decision cites a number of authorities.

"In some of these cases, weight appears to be given to the fact that the director was not actually present at the meeting when the transaction was concluded, but this can not be of importance. If it were shown that Burgess urged the loan upon the board of directors, and actually voted in favor of it, his associates not seeing fit to intervene or object to this conduct, he would still have acted on his own behalf, and of those whose interests and efforts were of necessity adverse to those of the corporation. To assume that, under such circumstances, the facts he knew were communicated to the directors, and that he laid before them the fraud he was committing in wrongfully pledging property, would be a presumption too violent for belief, and would do great injustice to the remaining directors and the interests they represented."

So the court finds for the defendant, and makes an order dismissing the petition in so far as it is based on these credits. Judgment for the amount admitted to be had. The costs will follow the case.

*Kibler & Montgomery*, for plaintiff.

*Flory & Flory* and *A. A. Stasel*, for defendant.